IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Garden City Employees' Retirement System v.
Psychiatric Solutions, Inc., et al., No. 3:09-cv-
00882 (M.D. Tenn.)

Misc. Case No. _____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## OF NON-PARTY UNIVERSAL HEALTH SERVICES, INC.
## TO QUASH OR MODIFY SUBPOENA

## I.   INTRODUCTION

Universal Health Services, Inc. ("UHS") has moved to quash or modify the Subpoena to

Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil

Action, dated July 26, 2013 (the "Subpoena", attached hereto as Exhibit 1), issued on behalf of

plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Plaintiff"), in connection

with a federal securities fraud action brought by Plaintiff against defendants Psychiatric

Solutions Inc. ("PSI") and certain of its executives ("Defendants"), captioned *Garden City*

*Employees' Retirement System v. PSI*, No. 3:09-cv-00882-WJH (M.D. Tenn.) (the "Underlying

Litigation").[1]

UHS is not a party to the Underlying Litigation and is not alleged to have any

involvement in the purported wrongdoing therein.  Nevertheless, the Subpoena calls for UHS to

produce irrelevant documents regarding UHS' post hoc perspective on PSI and improvements

UHS made to PSI's facilities after acquiring the company in 2010.  After agreeing to accept

---

[1]   Pursuant to Local Rule of Civil Procedure 26.1(f), counsel for UHS has submitted a
certification that the parties, after reasonable effort, are unable to resolve the dispute that forms
the basis of this motion.  Attorney Certification of Steven A. Reed (Oct. 4, 2013), attached hereto
as Exhibit 2.

service of the Subpoena, UHS promptly submitted written objections pursuant to Rule 45(c).
Notwithstanding and without waiving its objections, UHS searched for a targeted set of
responsive documents in the hopes that the matter could be resolved efficiently.  After informing
counsel for Plaintiff that no such targeted documents existed, counsel for UHS and Plaintiff had
several phone calls and email communications but were unable to reach agreement on what
additional documents UHS would be required to search for and produce.

UHS should not be required to search for and produce any additional documents.  As
UHS explained in its written objections, the Subpoena calls for the production of documents that
are completely irrelevant to the claims in the underlying litigation.  The Subpoena is unduly
burdensome because the requests and topics are overbroad.  And, many of the documents
requested can be obtained elsewhere, including from the defendants in the action, and UHS
should not bear the burden of searching for and producing voluminous documents that are
ultimately irrelevant to Plaintiff's case.

As set forth in further detail below, UHS respectfully requests that this Court quash or
modify the Subpoena under Federal Rule of Civil Procedure 45(c)(3).

## II.    **BACKGROUND**

In the Underlying Litigation, Plaintiff has brought a "securities class action on behalf of
all persons who purchased or otherwise acquired the securities of [PSI] between February 21,
2008 and February 25, 2009, inclusive (the 'Class Period'), against PSI and certain of its officers
and directors [('Defendants')] for violations of the Securities Exchange Act of 1934 (the '1934
Act')."  Complaint, attached hereto as Exhibit 3, at ¶ 1.  Plaintiff alleges that between February
20, 2008 and January 13, 2009, *id.* ¶¶ 79-156, "[D]efendants deliberately or recklessly misled
investors by making false statements or omitting material information about [*inter alia*] . . .
patient care and safety issues" and "the costs of proving purported 'high quality' treatment to

[patients]." *Id.* at ¶ 3.  UHS acquired PSI almost two years after this alleged securities fraud occurred, on November 15, 2010.  Aug. 16, 2013 Ltr. from S. Reed to C. Wood ("Objections"), attached hereto as Exhibit 4, at 5.  The Complaint does not name UHS or any executive of UHS as a defendant, neither does it allege that UHS acted improperly or had any knowledge of the alleged securities fraud by the company it ultimately acquired.

On or about July 30, 2013, counsel for Plaintiff sent the Subpoena to counsel for UHS who agreed to accept service.  The Subpoena seeks the following documents:

> All documents that support, substantiate, formed the basis of, or relate to, the following statements made by Steve Filton during UHS' June 23, 2011, presentation at the Wells Fargo Securities Healthcare Conference:

>> [1] You know, I think we had the sense that PSI was a company focused primarily on growth.  They pursued a very aggressive growth strategy in their short eight-, nine-year history, did so very effectively.  But I think as a consequence of that, perhaps they were a little bit less focused, organized, disciplined than we were accustomed to seeing the UHS hospitals managed and operated in a whole host of areas, quality, risk management, operational efficiency, capital spend, et cetera.

>> *            *            *

>> [2] Certainly, you know, we're – improvements that can be made immediately, we're making, and again I think we've tried to prioritize, so that the changes and the improvements that affect patient quality and patient safety and risk factors, we're focusing on those first, and holding, to some degree, in abeyance those that are more operational efficiencies and margin improvement, et cetera.

> including but not limited to:

>> (a) all documents related to PSI's lack of "focus[]" "organiz[ation]" and "discipline[]";
>> (b) all documents related to PSI's "quality, risk management, operational efficiency, capital spend";
>> (c) all documents related to improvements made by UHS to PSI Facilities that affected patient quality, patient safety and risk factors;
>> (d) all documents that related to the prioritization of improvements to PSI Facilities.

Ex. 1, Subpoena at 6.

The first statement attributed to Mr. Filton as cited in the Subpoena was in response to an analyst's question: "Steve, can you maybe give us an update of how the integration of [PSI] facilities are going? Is it ahead or behind schedule, and maybe what you have learned incrementally about PSI facilities since you have owned them?" Transcript of UHS – Universal Health Services Inc. at Wells Fargo Securities Healthcare Conference (June 23, 2011) ("Conf. Tr."), attached hereto as Exhibit 5, at 1. The second statement cited in the subpoena was in response to the question: "Okay, so is there anything that could speed up the implementation of those new [UHS] standards on PSI or do you feel pretty adamant that it's going to be more likely to happen in 2012[?]" *Id.* at 2.

On August 16, 2013, counsel for UHS objected to the Subpoena in relevant part as follows:

> UHS objects to this request on the grounds that it seeks documents that are not relevant to any party's claims or defenses. Statements made in June 2011, which is more than two years after the end of the class period in the Underlying Litigation, about facilities UHS acquired on November 15, 2010, which is more than a year and half after the end of the class period in the Underlying Litigation, are irrelevant to the claims and defenses in the Underlying Litigation. UHS also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence concerning the alleged misrepresentations and omissions in connection with the sale of securities that is the subject of the Underlying Litigation. UHS further objects to this request on the grounds that it is overly broad, unduly burdensome, and does not describe the items requested with reasonable particularity. For example, the request seeks all documents related to improvements made after November 15, 2010, more than a year and a half after the end of the class period in the Underlying Litigation, to 94 facilities across the United States. It is unduly burdensome to collect and produce all documents that relate to every single change made at 94 facilities for nearly a four year period. Additionally, UHS objects to this Request to the extent that it is vague and ambiguous, including its use of the phrases "forms the basis of," "improvements made by UHS to PSI Facilities that affected patient quality, patient safety and risk factors" and "prioritization of improvements."

Ex. 4, Objections at 5.

Notwithstanding and preserving these objections, UHS investigated the issues raised by

the Subpoena, and informed Plaintiff that Mr. Filton's statements at the June 23, 2011

presentation that are cited in the Subpoena were unscripted, that no particular documents

"formed the basis of" those statements, and therefore UHS had nothing to produce with respect

to this portion of the subpoena.  Oct. 1, 2013 Ltr. from S. Reed to C. Wood, attached hereto as

Exhibit 6, at 2; *see* Affidavit of Steve Filton (Oct. 4, 2012) ("Filton Affidavit"), attached hereto

as Exhibit 7, at ¶ 4 ("Any statements made by me at the Wells Fargo Securities Healthcare

Conference on June 23, 2011 were unscripted.  I do not have, and am not aware of, any

documents that formed the basis for the statements attributed to me in the [S]ubpoena . . .").

UHS further informed Plaintiff that this portion of the Subpoena as well as the Subpoena's

request for all documents that "support," "substantiate," or "relate to" Mr. Filton's statement or

the four broad subjects set forth in the Subpoena are clearly overbroad and fall outside the scope

of relevant discovery permissible under the Federal Rules of Civil Procedure.  Ex. 6, Oct. 1,

2013 Ltr. from S. Reed to C. Wood, at 2.

Plaintiff has acknowledged that it has had ample opportunity to obtain several million

pages of discovery from PSI that do relate to the relevant issues and time period.  *Id.* at 3.

Moreover, while Plaintiff originally was amenable to limiting the subpoena request to documents

in Mr. Filton's custody, it now has reverted to the original expanded scope of the subpoena

covering documents in UHS' custody.  Oct. 2, 2012 Ltr. from C. Wood to S. Reed, attached

hereto as Exhibit 8, at 1.

Plaintiff's position conflicts with the law and general principles of equity surrounding

non-party discovery.  UHS is not a party in the Underlying Litigation and should not be forced to

bear the costs of searching for, reviewing, and producing a large number of documents that are

completely irrelevant to that case.

III.   **ARGUMENT**

A.   **Standard**

"A non-party may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45 of the Federal Rules of Civil Procedure." *Brunkhorst Co. v. IHM*, Misc. No. 12-0217, 2012 WL 5250399, at *5 (E.D. Pa. Oct. 23, 2012) (quotation and citation omitted). "Rule 45 . . . establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." *First Sealord Sur. v. Dunkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (citing Fed. R. Civ. P. 45). A subpoena directed to a non-party under Rule 45 must fall within the scope of relevant discovery permissible under Rule 26(b)(1). *Id.* Under Rule 45, "courts have significant discretion" to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be "unreasonable and oppressive." *Id.*, 918 F. Supp. 2d at 383.

In applying Rules 26 and 45, courts balance several competing factors: (1) relevance, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation. *E.g. Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, Misc. No. 07-133, 2008 WL 597711, at *2 (E.D. Pa. Mar. 4, 2008); *Lady Liberty Transp. Co. v. Philadelphia Parking Auth.*, No. 05-1322, 2007 WL 707372, at *9 (E.D. Pa. Mar. 1, 2007); *Grider v. Keystone Health Plan Central, Inc.*, No. 05-MC-40, 2005 WL 2030456, at * 7 (M.D. Pa. July 28, 2005); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005); *Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc.*, No. 99-5034, 2003 WL 25666135, at *2 (E.D.Pa. Feb. 28, 2003). The last factor—the subpoena recipient's status as a nonparty to the litigation—is accorded special weight because "courts

recognize that discovery should be more limited to protect [non-parties] from harassment, inconvenience or disclosure of confidential documents." *Brunkhorst*, 2012 WL 5250399, at \*5; *see Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir .1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"); *Misc. Docket Matter I v. Misc. Docket Matter 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusamo*).

Applying these principles here, it is clear that UHS—a non-party— should not be required to respond to the burdensome and unnecessary subpoena for irrelevant documents and that the Court should grant its motion to quash or modify the Subpoena.

**B.** **The Subpoena Should Be Quashed Or Modified Because The Discovery Sought is Irrelevant, Unreasonable And Oppressive**

**1.** **The Documents Requested Are Irrelevant**

Courts recognize that to determine the relevancy of documents requested from a non-party, it is necessary to construe the elements at issue in the underlying claims. *E.g. Brunkhorst*, 2012 WL 5250399 at \*5.  Plaintiff itself has asserted that the central issues in the Underlying Litigation are:

> a.     Whether Defendants acted with the requisite scienter in their statements to investors or in their failures to provide material facts that under the circumstances was [sic] misleading to investors;
> b.     Whether Defendants' misrepresentations and/or omissions were material;
> c.     Whether the market for PSI common stock was efficient so as to presume reliance by investors; and
> d.     Whether the Defendants' cited misrepresentations and/or omissions caused Plaintiffs and class members a loss during the class period.

*Garden City Employees' Ret. Sys. v. Central States, Southeast and Southwest Areas Pension Fund*, No. 3:09-cv-00882, 2012 WL 1071281, at \*35 (M.D. Tenn Mar. 29, 2012).  All of these issues are concerned with the Class Period of February 21, 2008 through February 25, 2009, and

none of these issues has anything to do with UHS, its acquisition of PSI almost two years later on November 15, 2010, or statements purportedly made by Mr. Filton about the acquisition six months after that, on June 23, 2011.

Indeed, the statements attributed to Mr. Filton on June 23, 2011 that are the subject of the Subpoena offer a hindsight perspective with respect to UHS' acquisition of PSI that has no bearing on any of the issues in the Underlying Litigation.[2]  With respect to the first statement cited in the Subpoena, Mr. Filton was asked to provide an "update of how the integration of [PSI] facilities was going . . .  and what you have learned incrementally about the PSI facilities *since you have owned them?*" Ex. 5, Conf. Tr. at 1 (emphasis added).  Mr. Filton responded that he believed that at the time of the acquisition PSI was a company "focused on growth," and speculated, "I think as a consequence of that [focus on growth], perhaps they were a little bit less focused, organized, disciplined than we were accustomed to seeing the UHS hospitals managed and operated . . ." *Id.*; Ex. 1, Subpoena, at 6.  This exchange between an analyst and Mr. Filton in 2011 clearly focuses on what UHS learned about PSI *after* the acquisition and reflects Mr. Filton's *retrospective speculation* as to whether and why PSI "perhaps" was a "little less focused, organized and disciplined" than UHS. *Id.*

With respect to the second statement cited in the Subpoena, Mr. Filton was asked when UHS would "implement . . . new standards [at] PSI." Ex. 5, Conf. Tr. at 1.  In response, Mr. Filton stated that UHS was prioritizing the changes it was making at PSI, and explained that UHS was focusing first on "the changes and improvements that affect patient quality and patient safety and risk factors, . . . and holding, to some degree, in abeyance those that are more operational efficiencies and margin improvements." *Id.*  This discussion plainly focuses on

---

[2]     For purposes of this motion only, UHS assumes that the statements attributed to Mr. Filton in the Subpoena accurately reflect what he said at the June 23, 2011 conference.

UHS' *current and future plans for PSI*, and suggests nothing about PSI during the February 2008 through February 2009 time period relevant to the Underlying Litigation.

Mr. Filton's statements are, at most, indicative of UHS' beliefs about PSI at the time of the acquisition and its business plans following the acquisition. Neither these statements nor any documents which "support, substantiate, formed the basis of, or relate to" them has a bearing on the state of mind of the PSI executives who made alleged misrepresentations two years prior to when PSI was acquired by UHS, the materiality of any alleged misstatements to a reasonable investor, whether investors are presumed to have relied on the alleged misrepresentations, or whether those misrepresentations caused investors' losses.

A similar issue of relevance was addressed by the court in *In re Subpoena Duces Tecum Service on Duke Energy Corpation in the matter of in re: Calpine Corporation Securities Litigation*, No. 3:05-MC-201, 2005 WL 2674938, at *6 (W.D.N.C. Oct. 18, 2005), where the plaintiff in a securities fraud case sought broad categories of documents from Duke Energy Corporation, a non-party competitor of Calpine, the defendant company. The court properly observed—much like the circumstances here—that "the central issue in the [underlying] Lawsuit is what Calpine knew at the time that it made the alleged misstatements" and rejected as irrelevant the conduct of Duke Energy to the extent this conduct did not "involve its relations with Calpine during the relevant time period." *Id.* (directing Duke Energy to respond only to those requests which involve its communications with Calpine during the relevant time period).

Here, Plaintiff's request is even further removed from any relevant discovery, because Plaintiff has not demonstrated that UHS had any interactions with PSI at the time of the alleged misstatements. *See id.* As such, any information in UHS' possession more than two years after the alleged misstatements were made is wholly irrelevant to any of the issues and the required

elements of the underlying claims asserted by Plaintiff against PSI.  For this reason, an order

quashing Plaintiff's Subpoena is appropriate.  *See Essex Ins. Co. v. RJMC, Inc.*, No. 01-4049,

2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008) ("We will quash at this time the subpoena . . .

with respect to the non-parties due to the absence of any support in the record to demonstrate

relevance.").

### 2.     The Document Requests Are Overbroad And Lack Particularity

As described above, when UHS received the initial subpoena from Plaintiff, it submitted

its responses and objections and worked in good faith to identify any documents that formed the

basis for the statements attributed to Mr. Filton.  Notwithstanding these efforts, Plaintiff

continues to push for the full scope of documents requested in the Subpoena.  In addition to

seeking documents that are wholly irrelevant to Plaintiff's claims in the underlying litigation, the

request is unduly burdensome because it is overbroad.  The Subpoena does not request

documents with particularity.  Rather, it broadly requests "[a]ll documents that support,

substantiate, formed the basis of, or relate to", *without limitation*:

> (a)     "PSI's lack of 'focus[]', 'organiz[ation]' and 'discipline[]'";
> (b)     "PSI's 'quality, risk management, operational efficiency, capital spend'";
> (c)     "improvements made by UHS to PSI Facilities that affected patient quality, patient safety and risk factors"; and
> (d)     "the prioritization of improvements to PSI Facilities."

Ex. 1, Subpoena at 6.  Moreover, Plaintiff's counsel has made clear that "simply searching for

documents within Mr. Filton's control is not sufficient to fully respond to the subpoena" and that

it seeks "evidence within UHS' custody."  Ex. 8, Oct. 2, 2012 Ltr. from C. Wood to S. Reed at 1.

Because PSI is now a subsidiary of UHS, documents "relating to" PSI and the four broad

categories set forth in the Subpoena during the "Relevant Time Period" as defined by

Plaintiffs—January 1, 2007 to the present, Ex. 1, Subpoena at 1—abound.  Indeed, because

"UHS" is defined in the subpoena to include UHS' subsidiaries, Ex. 1, Subpoena at 6,the

Subpoena literally calls for every document in UHS' and PSI's possession relating to PSI's "organization", "capital spend", "improvements" to its facilities, and the like, for the past six years. Consequently, responding to the Subpoena would require UHS to collect, review, and produce a huge universe of documents that have nothing to do Plaintiff's securities fraud claims against PSI. In short, based solely on unscripted, general comments made in response to an analyst's questions years after the statements at issue in the Underlying Litigation, Plaintiff is demanding that UHS perform a Herculean task that is ultimately worthless to that litigation.

### 3.   The Subpoena Should Be Quashed Or Modified Because It Seeks Documents That Can Be Obtained From A More Convenient, Less Burdensome Source

The Subpoena should also be quashed or modified because Plaintiffs have had unfettered access to PSI's documents from the relevant time period as a result of discovery in the Underlying Litigation, in which millions of pages of documents have already been produced. Oct. 1, 2013 Ltr. from S. Reed to C. Wood, at 3. Plaintiff does not claim that PSI has denied them any discovery nor has Plaintiff articulated any actual need for overlapping documents from UHS. Accordingly, Plaintiff "has not shown that they cannot obtain the same information from [] a party in [the underlying] case that is subject to the broad discovery under the Federal Rules." *Lady Liberty*, 2007 WL 707372, at *9 (quashing subpoena).

### 4.   All Applicable Factors Support Modifying The Subpoena

Plaintiff seeks to "simply engage in a fishing expedition" which equity and case law prohibit. *Essex*, 2008 WL 2757862, at *2. Just as in *Grider*, Document Request Number 1 is "overbroad and unduly burdensome, particularly because [the recipient of the subpoena is not] a part[y] to the underlying action, and because responding fully to th[is] request[] appears that it would require substantial effort and would likely require [the recipient] to review and turn over documents potentially having nothing to do with the underlying action." *Grider*, 2005 WL

2030456, at *8.  Accordingly, UHS should be excused from responding to this document request

to the extent it requires production of any documents in addition to that for which UHS has

already agreed to search.  *See id.*  (excusing the non-party subpoena recipient from responding to

document requests).

**IV.** **CONCLUSION**

     For the foregoing reasons, the Subpoena should be quashed or modified and UHS should

be awarded its fees and costs incurred in responding to the Subpoena and briefing and arguing

this motion.


Dated: October 4, 2013                Respectfully submitted,

                        *Steven A. Reed /ZEH*

                        Marc J. Sonnenfeld (17210)
                        Steven A. Reed (60145)
                        Karen Pieslak Pohlmann (60079)
                        Laura E. Hughes (310658)
                        MORGAN, LEWIS & BOCKIUS LLP
                        1701 Market Street
                        Philadelphia, PA  19103-2921
                        tel./fax: 215.963.5000/5001
                        msonnenfeld@morganlewis.com
                        sreed@morganlewis.com
                        kpohlmann@morganlewis.com
                        lehughes@morganlewis.com


                        *Attorneys for Non-Party*
                        *Universal Health Services, Inc.*