EXHIBIT 1

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| Garden City Employees' Retirement System | ) |
| *Plaintiff* | ) |
| v. | ) |
| Psychiatric Solutions, Inc., et al., | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.    3:09-cv-00882-WJH

(If the action is pending in another district, state where:
Middle District of Tennessee            )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Universal Health Services, Inc.
367 South Gulph Road, King of Prussia, PA 19406

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place:  Robbins Geller Rudman & Dowd LLP<br>1845 Walnut Street, 23rd Floor<br>Philadelphia, PA  19103 | Date and Time:<br><br>08/28/2013 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    07/26/2013

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    Central States, Southeast
_____ , who issues or requests this subpoena, are:

Chris Wood, Robbins Geller Rudman & Dowd LLP
One Montgomery Street, Suite 1800, San Francisco, CA 94104
Tel: (415) 288-4545 E-mail: CWood@rgrdlaw.com

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

    **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SCHEDULE A**
**(Universal Health Services, Inc.)**

## I.    INSTRUCTIONS

1.      Pursuant to Fed. R. Civ. P. 45, you are requested to produce all documents in your possession, custody or control that are responsive to each of the requests described in Section III ("Documents to Be Produced") pursuant to these instructions and the definitions set forth in Section II. A document is in your custody if it is in your physical possession, or is being kept, held, stored or maintained for you by any other person or entity (including any of your agents, employees, contractors, directors, officers, employees, attorneys, accountants, financial advisors, representatives, subsidiaries and affiliates).  A document is in your control if you have the power or right to obtain the document or a copy thereof from another person or entity.

2.      All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.   In addition, documents are to be produced in full and unexpurgated form; redacted documents will not constitute compliance with this request.

3.      Pursuant to Fed. R. Civ. P. 45(a)(1)(D), you are to produce for inspection and copying by plaintiffs *original* documents, including those stored electronically, as they are kept in the usual course of business.  If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.      Except as otherwise specified herein, each document request concerns the time period from January 1, 2007 through the present (the "Relevant Time Period").   In responding to these requests, you must produce all documents created, dated, prepared, drafted, generated, sent, provided, obtained, used or received during the Relevant Time Period that are responsive, in whole

- 1 -

or in part, to the subject matter of the request, *and all responsive documents created before or after the Relevant Time Period that relate, in whole or in part, to facts, transactions, events or occurrences taking place (or anticipated to take place) during the Relevant Time Period.*

5.      All documents must be produced in their entirety and without deletion or excisions, including all attachments and enclosures. All documents should be produced in their original folder, binder or other cover or container unless that is not possible. *Documents must be produced in their entirety regardless of whether you consider the entire document to be relevant or responsive to these requests.* Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook or other cover or container, a copy of the label of such cover or other container shall be included in your production.

6.      Please label the documents produced in a manner sufficient to identify the place where they were kept in the ordinary course of your business and the custodian of the documents produced. You may comply with this instruction by producing a source log that identifies, by individual Bates number or Bates range, the source of the documents produced, including the name of the person who maintained the copy of the document produced and the location in which the document was kept (*e.g.*, UHS00001-UHS01000, Steve Filton Desk Files, King of Prussia, PA). If the documents produced have been retrieved from a place other than that in which they were originally maintained, such as a document archive or off-site storage location, the label or source log should identify the original source and custodian, by name, of the documents produced.

7.      Scanned documents should be provided as single-page TIFF images with an .opt image cross-reference file and a delimited database load file. The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, contain correct document breaks: for instance, a five-

- 2 -

860648_1

page fax consisting of a cover page and a four-page memo should be unitized as a five-page document). Multi-page OCR text for each document should also be provided.

8.      Electronically stored information ("ESI") should be produced as single-page TIFF images with the exception of Microsoft Excel spreadsheets, audio, video and database-type files including, but not limited to, Microsoft Access – which shall be produced in native format. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this Paragraph, the Parties agree to meet and confer on the issue in good faith. Additionally, all ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .opt image cross reference file will also be provided for all TIFF images.

9.      If any document responsive to these requests is withheld under a claim of privilege or upon any other ground, as to each such document, identify the privilege being asserted and provide the following information in sufficient detail to permit the Court to rule on your claim:

        (a)     The date, author, primary addressee and secondary addressees or persons copied, including the relationship of those persons to the custodian and/or author of the document;

        (b)     A brief description sufficient to identify the type, subject matter and purpose of the document;

        (c)     All persons to whom its contents have been disclosed; and

        (d)     The party who is asserting the privilege.

10.     If a portion of any document responsive to these requests is withheld under the claim of privilege pursuant to Instruction No. 9 above, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.  If you have redacted any portion of a document pursuant to Instruction No. 9 above, stamp the word "REDACTED" on each portion of the document that you have redacted.  Redactions should be included on the privilege log described in Instruction No. 9 above.  Redactions for any other purpose are not permitted.

11.     Where a request identifies or requests documents relating to a corporation, partnership, limited liability company or any other non-natural person or entity, the request shall be construed broadly to encompass any known predecessor, successor, parent, subsidiary, division, affiliate, operating unit, partner, officer, director, employee or agent of the entity.

12.     If any otherwise responsive document was, but is no longer in existence or your possession, custody or control, please identify its current or last-known custodian and describe in full the circumstances surrounding its disposition from your possession, custody or control.

13.     If no documents responsive to a particular document request exist or are within your possession, custody or control, please so state in your written response to the request.

## II.    DEFINITIONS

This section sets forth specific definitions applicable to the words and terms used in these requests.  Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific customary and usage definition in your trade or industry, in which case they shall be interpreted in accordance with such usual customary and usage definition of which you are aware.

1.     "And" and "or" are to be construed both conjunctively and disjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside of its scope.

2.      "Any" is understood to include and encompass "all."  The word "all" also includes "each" and vice versa.

3.      "Communication" means any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to-face or by means of telephone, telegraph, telex, telecopier, electronic mail or other media.

4.      "Concerning," "referring" or "relating to" include reflecting, containing, setting forth, pertaining to, recording, disclosing, explaining, describing, evidencing, constituting, summarizing or having any logical or factual connection with the subject matter of the requests.

5.      "Correspondence" means every form of written or recorded communication, including, but not limited to, letters, faxes, e-mail, voice mail, voice messages, instant messages, text messages and transcripts of oral communications.

6.      "Document" and "documents" have the same meaning as used in Fed. R. Civ. P. 34, and include all correspondence, communications, writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium from which information can be obtained.

7.      "Including" means "including, but not limited to."  "Including" is not to be interpreted as narrowing a request or excluding certain non-enumerated documents that would otherwise be responsive to the request.  Rather, it is a signal that the enumerated documents that follow are illustrative of the types of documents sought by the request.

8.      "Individual Defendants" refers to Joey A. Jacobs, Jack E. Polson and Brent Turner and their agents, attorneys, advisors, accountants, and all other persons acting or purporting to act on their behalf.

9.    "Person" or "persons" means and includes both natural persons and non-natural persons, including public or private corporations, partnerships, joint ventures, associations, government or governmental entities (including any governmental agency or political subdivision of any government), and any other group form of business or legal organization or arrangement, or other legal entity, including the representatives of any such person or persons.

10.    "Psychiatric Solutions" or "PSI" refers to defendant Psychiatric Solutions Inc., any of its subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents or members of the Board of Directors of Psychiatric Solutions, its attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

11.    "PSI Facilities" means each of the entities identified at pages 18-20 of PSI's 2009 Report on Form 10-K, which are attached hereto as Exhibit A.

12.    "UHS," "you" or "your" refers to Universal Health Services, Inc. and any of UHS' predecessors, successors, parents, subsidiaries, divisions, partnerships and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

13.    The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

## III.    DOCUMENTS TO BE PRODUCED

REQUEST NO. 1:

All documents that support, substantiate, formed the basis of, or relate to, the following statements made by Steve Filton during UHS' June 23, 2011, presentation at the Wells Fargo Securities Healthcare Conference:

- 6 -

You know, I think we had the sense that PSI was a company focused primarily on growth. They pursued a very aggressive growth strategy in their short eight-, nine-year history, did so very effectively. But I think as a consequence of that, perhaps they were a little bit less focused, organized, disciplined than we were accustomed to seeing the UHS hospitals managed and operated in a whole host of areas, quality, risk management, operational efficiency, capital spend, et cetera.

*       *       *

Certainly, you know, we're – improvements that can be made immediately, we're making, and again I think we've tried to prioritize, so that the changes and the improvements that affect patient quality and patient safety and risk factors, we're focusing on those first, and holding, to some degree, in abeyance those that are more operational efficiencies and margin improvement, et cetera.

including but not limited to:

(a)     all documents related to PSI's lack of "focus[]" "organiz[ation]" and "discipline[]";

(b)     all documents related to PSI's "quality, risk management, operational efficiency, capital spend";

(c)     all documents related to improvements made by UHS to PSI Facilities that affected patient quality, patient safety and risk factors;

(d)     all documents that related to the prioritization of improvements to PSI Facilities.

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document |
| DESIGNATION | Confidential, Highly Confidential, etc. | If document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| SENTDATE | MM/DD/YYYY HH:MM | The date & time the email was sent. |
| CREATEDATE | MM/DD/YYYY HH:MM | The date & time the document was created. |
| LASTMODDATE | MM/DD/YYYY HH:MM | The date & time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY HH:MM | The date & time the document was received. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| FILEPATH | i.e.  Joe Smith/E-mail/Inbox<br>Joe Smith/E-mail/Deleted Items<br>Joe Smith/Loose Files/Accounting/...<br>Joe Smith/Loose Files/Documents and Settings/... | Location of the original document.  The source should be the start of the full path |
| HIDDENTYPE | Options: Track Changes, Hidden Spreadsheet, Very Hidden Spreadsheet, etc | The type of hidden modification of the document (e.g. Track Changes, Hidden Spreadsheet, Very Hidden Spreadsheet, etc) |
| AUTHOR | jsmith | The author of a document from entered metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>, tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| UNREAD | TRUE or FALSE | Y if an e-mail is unread, N if it has been read.  This value is blank for attachments and non e-mail documents. |
| IMPORTANCE | 0 or 1 or 2 | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance |
| CUSTODIAN | | The custodian / source of a document. **Note:** If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| NATIVELINK | D:\NATIVES\ABC0000001.xls | The full path to a native copy of a document. |
| FOREIGN LANGUAGE | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability. |
| FULLTEXT | D:\TEXT\ABC0000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate Unicode text file per document. These text files should be named with their corresponding bates numbers.  **Note:** E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT A

Table of Contents

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 10-K

(Mark One)

☑    **Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2009 or**

☐    **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the transition period from _____ to _____**

**Commission file number 0-20488**

# Psychiatric Solutions, Inc.
(Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **23-2491707** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |

**6640 Carothers Parkway, Suite 500
Franklin, TN 37067**
(Address of Principal Executive Offices, Including Zip Code)

**(615) 312-5700**
(Registrant's Telephone Number, Including Area Code)

Securities registered pursuant to Section 12(b) of the Act:

| Title Of Each Class | Name of Each Exchange On Which Registered |
|---|---|
| Common Stock, $.01 par value | NASDAQ Global Select Market |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. ☑ Yes    ☐ No

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. ☐ Yes    ☑ No

Note — Checking the box above will not relieve any registrant required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act from their obligations under those Sections.

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. ☑ Yes    ☐ No

Indicated by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). ☐ Yes    ☐ No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐ Yes    ☐ No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑    Accelerated filer ☐    Non-accelerated filer ☐    Smaller Reporting Company ☐
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). ☐ Yes    ☑ No

As of June 30, 2009, the aggregate market value of the shares of common stock of the registrant held by non-affiliates of the registrant was approximately $1.0 billion. For purposes of calculating such aggregate market value, shares owned by directors, executive officers and

5% beneficial owners of the registrant have been excluded.

As of February 22, 2010, 56,263,260 shares of the registrant's common stock were outstanding.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of the registrant's definitive proxy statement for its 2010 annual meeting of stockholders to be held on May 18, 2010 are incorporated by reference into Part III of this Form 10-K.

# INDEX

|  | PAGE |
|---|---|
| PART I | 3 |
| Item 1. Business | 3 |
| Item 1A. Risk Factors | 12 |
| Item 1B. Unresolved Staff Comments | 18 |
| Item 2. Properties | 18 |
| Item 3. Legal Proceedings | 20 |
| Item 4. Submission of Matters to a Vote of Security Holders | 20 |
| PART II | 21 |
| Item 5. Market For Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 21 |
| Item 6. Selected Financial Data | 21 |
| Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations | 23 |
| Item 7A. Quantitative and Qualitative Disclosures About Market Risk | 31 |
| Item 8. Financial Statements and Supplementary Data | 31 |
| Item 9. Changes in and Disagreements With Accountants on Accounting and Financial Disclosure | 31 |
| Item 9A. Controls and Procedures | 32 |
| Item 9B. Other Information | 32 |
| PART III | 32 |
| Item 10. Directors, Executive Officers and Corporate Governance | 32 |
| Item 11. Executive Compensation | 33 |
| Item 12. Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 33 |
| Item 13. Certain Relationships and Related Transactions, and Director Independence | 33 |
| Item 14. Principal Accountant Fees and Services | 33 |
| PART IV | 34 |
| Item 15. Exhibits and Financial Statement Schedules | 34 |
| Index to Financial Statements | 34 |
| Signatures | |
| EX-21.1 | |
| EX-23.1 | |
| EX-31.1 | |
| EX-31.2 | |
| EX-32.1 | |

9/13/2011

Table of Contents

- economic downturn resulting in efforts by federal and state health care programs and managed care companies to reduce reimbursement rates for our services;

- health care reform proposals that, if adopted, could adversely impact reimbursement rates for our services;

- potential competition that alters or impedes our acquisition strategy by decreasing our ability to acquire additional inpatient facilities on favorable terms;

- our ability to comply with applicable licensure and accreditation requirements;

- our ability to comply with extensive laws and government regulations related to billing, physician relationships, adequacy of medical care and licensure;

- our ability to retain key employees who are instrumental to our operations;

- our ability to successfully integrate and improve the operations of acquired inpatient facilities;

- our ability to maintain effective internal controls in accordance with Section 404 of the Sarbanes-Oxley Act;

- our substantial indebtedness and adverse changes in credit markets impacting our ability to receive timely additional financing on terms acceptable to us to fund our acquisition strategy and capital expenditure needs;

- our ability to maintain favorable and continuing relationships with physicians and other health care professionals who use our inpatient facilities;

- our ability to ensure confidential information is not inappropriately disclosed and that we are in compliance with federal and state health information privacy standards;

- our ability to comply with federal and state governmental regulation covering health care-related products and services on-line, including the regulation of medical devices and the practice of medicine and pharmacology;

- our ability to obtain adequate levels of general and professional liability insurance;

- future trends for pricing, margins, revenue and profitability that remain difficult to predict in the industries that we serve;

- fluctuations in the market value of our common stock;

- negative press coverage of us or our industry that may affect public opinion; and

- those risks and uncertainties described from time to time in our filings with the SEC.

We caution you that the factors listed above, as well as the risk factors included in this Annual Report on Form 10-K, may not be exhaustive. We operate in a continually changing business environment, and new risk factors emerge from time to time. We cannot predict such new risk factors nor can we assess the impact, if any, of such new risk factors on our businesses or the extent to which any factor or combination of factors may cause actual results to differ materially from those expressed or implied by any forward-looking statements.

**Item 1B.  Unresolved Staff Comments.**

We have no unresolved SEC staff comments.

**Item 2.  Properties.**

We operate 94 owned or leased inpatient behavioral health care facilities with approximately 11,000 licensed beds in 32 states, Puerto Rico, and the U.S. Virgin Islands. The following table sets forth the name, location, number of licensed beds and the acquisition date for each of our owned and leased inpatient behavioral health care facilities.

| Facility | Location | Beds | Own/Lease | Date Acquired/Opened |
|---|---|---|---|---|
| Cypress Creek Hospital | Houston, TX | 96 | Own | 9/01 |
| West Oaks Hospital | Houston, TX | 160 | Own | 9/01 |
| Texas NeuroRehab Center | Austin, TX | 151 | Own | 11/01 |
| Holly Hill Hospital | Raleigh, NC | 152 | Own | 12/01 |
| Riveredge Hospital | Forest Park, IL | 224 | Own | 7/02 |

18

9/13/2011

## Table of Contents

| Facility | Location | Beds | Own/Lease | Date Acquired/Opened |
|---|---|---|---|---|
| Jefferson Trail Treatment Center for Children | Charlottesville, VA | 100 | Lease | 4/03 |
| Cedar Springs Hospital | Colorado Springs, CO | 110 | Own | 4/03 |
| Laurel Ridge Treatment Center | San Antonio, TX | 252 | Own | 4/03 |
| San Marcos Treatment Center | San Marcos, TX | 265 | Own | 4/03 |
| Shadow Mountain Behavioral Health System | Tulsa, OK | 209 | Own | 4/03 |
| Laurel Oaks Behavioral Health Center | Dothan, AL | 115 | Own | 6/03 |
| Hill Crest Behavioral Health Services | Birmingham, AL | 205 | Own | 6/03 |
| Gulf Coast Treatment Center | Fort Walton Beach, FL | 168 | Own | 6/03 |
| Manatee Palms Youth Services | Bradenton, FL | 60 | Own | 6/03 |
| Havenwyck Hospital | Auburn Hills, MI | 184 | Own | 6/03 |
| Heartland Behavioral Health Services | Nevada, MO | 159 | Own | 6/03 |
| Brynn Marr Hospital | Jacksonville, NC | 88 | Own | 6/03 |
| Benchmark Behavioral Health System | Woods Cross, UT | 151 | Own | 6/03 |
| Macon Behavioral Health Treatment Center | Macon, GA | 155 | Own | 6/03 |
| Manatee Adolescent Treatment Services | Bradenton, FL | 85 | Own | 6/03 |
| Gulf Coast RTCs | Crestview, FL | 254† | Lease | 6/03 |
| Alliance Health Center | Meridian, MS | 194 | Own | 11/03 |
| Calvary Center | Phoenix, AZ | 50 | Lease | 12/03 |
| Brentwood Hospital | Shreveport, LA | 200 | Own | 3/04 |
| Brentwood Behavioral Healthcare of Mississippi | Flowood, MS | 107 | Own | 3/04 |
| Palmetto Lowcountry Behavioral Health | North Charleston, SC | 112 | Own | 5/04 |
| Palmetto Pee Dee Behavioral Health | Florence, SC | 59 | Own | 5/04 |
| Fort Lauderdale Hospital | Fort Lauderdale, FL | 100 | Lease | 6/04 |
| Millwood Hospital | Arlington, TX | 120 | Lease | 6/04 |
| Pride Institute | Eden Prairie, MN | 42 | Own | 6/04 |
| Summit Oaks Hospital | Summit, NJ | 126 | Own | 6/04 |
| North Spring Behavioral Healthcare | Leesburg, VA | 77 | Own | 6/04 |
| Peak Behavioral Health Services | Santa Teresa, NM | 84 | Own | 6/04 |
| Alhambra Hospital | Rosemead, CA | 97 | Own | 7/05 |
| Belmont Pines Hospital | Youngstown, OH | 102 | Own | 7/05 |
| Brooke Glen Behavioral Hospital | Fort Washington, PA | 146 | Own | 7/05 |
| Columbus Behavioral Center | Columbus, IN | 61 | Own | 7/05 |
| Cumberland Hospital | New Kent, VA | 136 | Own | 7/05 |
| Fairfax Hospital | Kirkland, WA | 133 | Own | 7/05 |
| Fox Run Hospital | St. Clairsville, OH | 100 | Own | 7/05 |
| Fremont Hospital | Fremont, CA | 96 | Own | 7/05 |
| Heritage Oaks Hospital | Sacramento, CA | 76 | Own | 7/05 |
| Intermountain Hospital | Boise, ID | 125 | Own | 7/05 |
| Meadows Hospital | Bloomington, IN | 78 | Own | 7/05 |
| Mesilla Valley Hospital | Las Cruces, NM | 168 | Own | 7/05 |
| Montevista Hospital | Las Vegas, NV | 101 | Own | 7/05 |
| Pinnacle Pointe Hospital | Little Rock, AR | 124 | Own | 7/05 |
| Sierra Vista Hospital | Sacramento, CA | 72 | Own | 7/05 |
| Streamwood Behavioral Health | Streamwood, IL | 371 | Own | 7/05 |
| Valle Vista Hospital | Greenwood, IN | 102 | Own | 7/05 |
| West Hills Hospital | Reno, NV | 95 | Own | 7/05 |
| Willow Springs Center | Reno, NV | 76 | Own | 7/05 |
| Canyon Ridge Hospital | Chino, CA | 106 | Own | 8/05 |
| Atlantic Shores Hospital | Fort Lauderdale, FL | 72 | Own | 1/06 |
| Wellstone Regional Hospital | Jeffersonville, IN | 100 | Own | 1/06 |
| Diamond Grove Center | Louisville, MS | 55 | Own | 5/06 |
| Hickory Trail Hospital | DeSoto, TX | 86 | Own | 7/06 |
| National Deaf Academy | Mount Dora, FL | 132 | Own | 7/06 |
| Windmoor Healthcare | Clearwater, FL | 100 | Own | 9/06 |
| University Behavioral Center | Orlando, FL | 104 | Own | 9/06 |
| Sandy Pines Hospital | Tequesta, FL | 80 | Own | 9/06 |
| Cumberland Hall | Hopkinsville, KY | 64 | Own | 12/06 |
| Panamericano | Cidra, Puerto Rico | 240 | Own | 12/06 |
| The Pines Residential Treatment Center | Portsmouth, VA | 424 | Own | 12/06 |

19

9/13/2011

Table of Contents

| Facility | Location | Beds | Own/Lease | Date Acquired/Opened |
|---|---|---|---|---|
| Palmetto Summerville | Summerville, SC | 60 | Lease | 12/06 |
| Three Rivers Residential Treatment — Midlands Campus | West Columbia, SC | 59 | Own | 12/06 |
| Virgin Islands Behavioral Services | St. Croix, U.S. Virgin Islands | 30 | Own | 12/06 |
| Virginia Beach Psychiatric Center | Virginia Beach, VA | 100 | Own | 12/06 |
| Three Rivers Behavioral Health | West Columbia, SC | 118 | Own | 01/07 |
| Copper Hills Youth Center | West Jordan, UT | 153 | Own | 05/07 |
| MeadowWood Behavioral Health System | New Castle, DE | 58 | Own | 05/07 |
| High Point Treatment Center | Cooper City, FL | 68 | Own | 05/07 |
| Focus by the Sea | St. Simons, GA | 101 | Own | 05/07 |
| Arrowhead Behavioral Health | Maumee, OH | 42 | Own | 05/07 |
| Friends Hospital | Philadelphia, PA | 219 | Own | 05/07 |
| Kingwood Pines Hospital | Kingwood, TX | 78 | Own | 05/07 |
| Windsor-Laurelwood Center | Willoughby, OH | 160 | Lease | 05/07 |
| Lighthouse Care Center of Augusta | Augusta, GA | 106 | Own | 05/07 |
| Lighthouse Care Center of Conway | Conway, SC | 108 | Own | 05/07 |
| Michiana Behavioral Health Center | Plymouth, IN | 80 | Own | 05/07 |
| Poplar Springs Hospital | Petersburg, VA | 199 | Own | 05/07 |
| River Park Hospital | Huntington, WV | 187 | Own | 05/07 |
| Lighthouse Care Center of Berkley | Summerville, SC | * | Own | 05/07 |
| Austin Lakes Hospital | Austin, TX | 48 | Lease | 08/07 |
| The Hughes Center for Exceptional Children | Danville, VA | 56 | Own | 09/07 |
| The Brook — Dupont | Louisville, KY | 66 | Own | 03/08 |
| River Point Behavioral Health | Jacksonville, FL | 99 | Own | 03/08 |
| The Brook — KMI | Louisville, KY | 106 | Own | 03/08 |
| The Vines | Ocala, FL | 88 | Own | 03/08 |
| Wekiva Springs | Jacksonville, FL | 68 | Own | 03/08 |
| Lincoln Prairie Behavioral Health Center | Springfield, IL | 80 | Own | 05/08 |
| Rolling Hills Hospital | Franklin, TN | 80 | Own | 01/09 |
| Prairie St. John's | Fargo, ND | 131 | Own | 09/09 |
| Emerald Coast Behavioral Hospital | Panama City, FL | 90 | Own | 09/09 |

\*    We acquired a non-operating facility, Lighthouse Berkley, in the acquisition of Horizon Health. Currently no patients are being served at this facility.

†    Operated beds.

In addition, our principal executive offices are located in approximately 65,000 square feet of leased space in Franklin, Tennessee. We do not anticipate that we will experience any difficulty in renewing our lease upon its expiration in February 2012, or obtaining different space on comparable terms if such lease is not renewed. We believe our executive offices and our hospital properties and equipment are generally well maintained, in good operating condition and adequate for our present needs.

Item 3.  Legal Proceedings.

A stockholder lawsuit alleging violations of federal securities laws was filed during the third quarter of 2009. We believe the lawsuit is without merit and are defending it vigorously.

We are subject to various claims and legal actions that arise in the ordinary course of our business. In the opinion of management, we are not currently a party to any proceeding that would have a material adverse effect on our financial condition or results of operations.

Item 4.  Submission of Matters to a Vote of Security Holders.

None.

9/13/2011